Good morning. May it please the Court, my name is Keith Robinson and I represent Vera Dragicevich, so I don't know that I performed that any better. Counsel, I'm going to jump right into the issue that concerns me, which is whether we have jurisdiction. The Notice of Appeal was actually filed three years ago, and it was three days late on September 6th, it was due September 3rd. Why do we have jurisdiction? Well several reasons. One is that the docket entries do show that it was actually submitted, filed on September 3rd. Well the only thing that happened on September 3rd, a fee was paid. But that's docket number 38. 37 is the Notice of Appeal that preceded it. So it could, I could do things in a sequential order there, and when one submits his Notice of Appeal and pays the fee, one already has to indicate on the ECF site, by clicking, that you are in fact filing a Notice of Appeal. That's how it knows how to send you off to the pay site. Okay, but document 37, which looks like is on the record page 26, there's so many numbers on this page, I'm not sure, shows at the top, filed September 6th. Yes. And it's labeled Notice of Appeal. And the record includes my declaration that was made at the time of these events that talked about calling on about September 6th, I would say, finding out where it was because I wasn't able to file my, I think it was a docketing statement. So as far as jurisdiction goes, what then happens is one has time, 30 days, to file a motion to extend that time. Well, you filed that motion and Judge Collins denied it because you failed to comply with Rule 7-3, dealing with meet and confer. Actually, she first denied it because she said she didn't have jurisdiction. Well, but then the Ninth Circuit allowed her to decide that issue. I mean, I'm talking about her final decision was she found that previously you had failed to comply with Central District 7-3 as it relates to summary judgment. She overlooked that. But then you failed to meet and confer, alleging there was some sort of government shutdown, which obviously would have nothing to do with private attorneys who can communicate. So she denied that request to extend the deadline. And so I'm trying to understand why we shouldn't just rely on the record and say that this appeal was untimely filed. And to the extent you relied on this Corvello case, that seems to be a totally different situation. It doesn't talk at all about sort of the issue that we have to decide. So I echo what my colleague has said here, why shouldn't we just find that the appeal is untimely filed? Okay. Because there is no indication in this record that Chase or its attorneys would have agreed to allow me to file a notice of appeal. Because they have a disagreed, here we are now. Well, that doesn't, there's no, there's no exception in the rule, local rule for parties that have had trouble getting along or parties that are intransigent that says, if you think it'll be futile, don't bother to talk to the other side. It seems to be a requirement and maybe it's pro forma, but why isn't the district court entitled to rely on that as a permissible ground for not allowing the late appeal? Because there was no dis-consideration of the merits that the notice of appeal had actually been submitted to the court in September 3. Well, it was, there was apparently an attempt to file it, but the actual filing date didn't occur. It was in the possession of the ECF system. What the people who run that system did with it upon finding it, I don't know. I mean, I haven't answered either of your questions. You didn't, you never raised with the district court the concept of if there was some sort of computer glitch and that if September 3 should have been treated as the real date for the notice of appeal, even though it's dated the 6th. You never asked for any equitable relief or for the court to view it in a way that would suggest that there was some fundamental unfairness here. So I'm curious why that wasn't raised by you. I believe it was raised, and to answer your other questions, the extraordinary emergency of the government shutting down would shut down, could conceivably have shut down the court system, but it turned out it didn't. It was, you had, okay, go ahead, but there was never a shutdown. But there, but I didn't have a crystal ball. Everyone in the news said there was going to be, and therefore, as my time was running to figure out what to do as far as filing this motion as to who had jurisdiction, as to whether the district court even had jurisdiction to file the motion in the right place. But looking back at the notice itself, you waited until the last minute. You know, there was nothing to preclude the filing of the notice of appeal a week earlier, and there's no evidence that was presented from the docketing folks that would explain or support your assertion that somehow they had it on the 3rd and by their own negligence failed to do something with it. There's no evidence of that in the record. And so I just have a hard time seeing how we can speculate about that where on the face of the notice it shows filing on the 6th. To answer the multiple questions concerning the failure to meet, confer, for example. Time was running, it was more important to get on file before the government shut down because it was threatening to shut down. It seems to me that that extraordinary circumstance justifies not asking opposing counsel for something that heretofore. I'm going back further than that in time. My question is about the notice of appeal itself. Why, you know, you waited until the 3rd of September, which was I believe the last day. And actually it was more than 30 days, but you got relief because of the weekend and then the day before was Labor Day. Yes. So you really had more than 30 days because of those two events. Yes. Obviously my preference would have been to have done it before September 3. But I followed the instructions that I had and that's what I did. My client had not decided what to do about the appeal. She was concerned and this Wells Fargo case that came down changed her mind and that's why I executed when I received those instructions. You're talking about Garvello? Yes. Garvello is a totally different case. There, there had been compliance with the temporary payment period, which is different from what happened with your client. There was compliance. My client did comply with those payments. Your client made the payments late. Each of the three payments. The first one was one day late, the second one was more than one day late and the third one was even more late. So she didn't comply with the payment plan and she probably then wasn't in a position to demand a modification, which is totally different from what happened in Garvello where the payments had been made and somebody set on a modification agreement and the Ninth Circuit said that under those circumstances that a modification agreement should have been offered and that's why it was reversed. But as I read the facts of that case compared to here, I don't think the two are the same. So Garvello, I think, is distinguishable from any help to you on any ground and tell me what I'm missing, please. I'm misperceiving. Well, there's not, I don't believe there's anything in the Garvello record or in the record of any of the other Chase cases that alleges that payments were always made on the due date. In fact, the, the allegate, the statement in both the Bushell case, the day, there's no statement in the record that they were all made but not a day late. In this case, Chase accepted those payments, they didn't send them back and so the payments were made and they were made within a normal frame of time as to when due dates typically are due with mortgage payments. So I do think it's, it does work into those cases and as well as the Bushell and the Jenkins case wherein the homeowner comply, is entitled to a modification agreement when they enter the program and they make the payments. I would agree with you that they were not made on the very day but that's in part, we don't know what the processing system is at Chase either in their giant fulfillment centers. My counsel is Judge Gould, if I could interject a question, looking for a different slant on this. There may be no jurisdiction but assuming that we conclude there is jurisdiction or that on some equitable theory, we can get to the merits here. Can you tell me why in your client's view, summary judgment for Chase was incorrect? I think that the primary issue is contract formation which in California we have standardized jury instructions called cases, the 300 series deals with contract, 302 and 307 deal with, it's a jury question to see if there was an offer. It's a jury question to determine if there was an acceptance. So those contract formation issues are jury issues if there's a dispute of fact. That's what would push it out of the motion for summary judgment. In this case, the decision of the district court was exclusively focused on whether or not Chase had solicited an offer from my client, that's the March 24 letter she sent. The district court took the position that a month later when Chase sent its letter, that that was not an acceptance, that was a new offer. Well, that's what contract law is. Offer acceptance or let's just say Chase's is a new offer. But that was accepted in writing by my client and she executed by following through. They accepted the three payments, they didn't send them back saying well, I think they're stopped from now claiming that they were late because they could have just sent them back and saying you're out of the program. But instead, for a period of a year and a half, two years, she continued to maintain the property and maintain some of the financial obligations of it. So to answer your question for the motion of summary judgment, the answer is I had a deal with Chase that I signed in April and I went through with that deal and that deal says they are supposed to send me a modification agreement. What trial courts had been doing up to recently with the Bushell case and the Jenkins case and the West case are the trial courts were saying as a matter of law these weren't really agreements. But what this Ninth Circuit has done is said, you know, as a matter of law, when Chase agreed to provide a new agreement, that was a binding obligation. And it wasn't subject to some future determination, which is the position Chase has been taking. But this Ninth Circuit has, as a matter of law, ruled that part of the agreement really means that Chase has already pre-approved these people for this payment and they need to send out a modified agreement, a pertinent modification. Except that the agreement says if all payments are made as scheduled and there's a very specific schedule, we will consider a permanent workout solution. So one requirement was that all of the payments be made as scheduled and that if so, they would consider a permanent workout. So the failure to make, I don't understand how the failure to make those payments as scheduled fulfills the condition that's stated in the contract. So the June 1st payment was received by Chase on June 2nd, 2010. The July payment was received by Chase significantly, substantially after its due date. And the August payment was received after the due date. To me, as scheduled means you make it when it's due. And if you don't make it when it's due, even if the bank receives it, aren't you, haven't you failed to comply with the key requirements of the trial period? If that's the case, they should send the money back. Or say something. But they didn't. Why would they have to send the money back? It's owed to them regardless of whether it's sufficiently timely to trigger an obligation to consider the modification. Why would they not be entitled to keep the money? Because they said they were accepting these payments as part of being part of the trial payment. That's the... Right. And the whole point of a trial period is to see if you're entitled to the permanent period. So if you don't, if you only half live up to your end of the bargain, then... I think half lived up would be sending half the payments. Or sending half of a payment. But there's also a time requirement. It's quite clear. But it wasn't a year late. It wasn't a month late. It doesn't say that. It has to be made as scheduled. It may be harsh, but there's no grace period in there. When the law often presumes, doesn't presume, it deems that when you've performed in a manner that's substantially what was required, it doesn't say time is of the essence. I don't believe in that contract. It doesn't say that strict compliance, if you don't do it, then you're out. Well, but what's unclear about this? Here's a list of payment dates. If all payments are made as scheduled, we will consider a permanent workout solution. So? If. And if all payments... I mean, the implication of that is if all payments are not made as scheduled, we will not consider a permanent workout solution. It seems to me that's a matter of fact. As scheduled, does it mean it's okay it's on the second? No, it has a schedule set out there. It's not... There's nothing to guess about. Payment due date is listed. It doesn't say it has to be received. It doesn't say it has to clear the bank. I mean, there are ambiguities there as far as when you have substantial performance as there was in this case. We've used a lot of your time. You've exceeded your time, but we've used an awful lot of it with questions. So you may have two minutes for rebuttal after we hear from opposing counsel. Thank you. Thank you, Your Honors. Glenn Platner for JPMorgan Chase. And let me just briefly touch on the jurisdiction issue because we've fully briefed it. But I think what the court is saying is exactly right. The requirement is filing the Notice of Appeal on time, and here it was not done. And we cited on page 21 of our brief the Kanju and the Perry v. Accurate case where technical issues or just paying the filing fee were deemed not enough. And I think those cases are on point. With respect, though, to the district court's refusal to grant the extension of time, which would have allowed the appeal to go forward, assuming that it wasn't otherwise timely, seems awfully harsh. Why is it okay? Well, Notice of Appeal deadlines are harsh. Statutes of limitations are harsh. If you're a day late, you could lose a million-dollar case or a million-dollar appeal. That's what that safety valve is for. Right. But he didn't do the safety valve right. He didn't comply with Rule 7-3. He was counsel of record. Let me interrupt you on that point. This has nothing to do with what's in the record. I went and talked to our CMECF expert back in Colorado. I said, how could it occur that in CMECF, if you pay the fee, there isn't some acknowledgment that you've also filed whatever document relates to the payment? And our person had trouble understanding why, if you go through the process using CMECF, where you pay the fee, that you wouldn't have also filed what you had to file, in this case, a Notice of Appeal. So it seems to me there could have been some computer glitch. Now, I acknowledge that maybe Mr. Robinson didn't tee that up as precisely as he could have for purposes of the appeal, but what harm is it if we, for equitable reasons, even on a sua sponte basis, conclude that there could have been some sort of glitch, given his declaration, and yet we allow the appeal to be timely filed, even though, as a technical matter, the record shows that the Notice of Appeal was filed three days after the payment was received. What harm is there to your side? If you affirm the appeal on the merits, which I think you should, there'd be no harm. But the rules are there for a reason, and he didn't comply with them. He wasn't timely. As the court pointed out, he waited to the last minute. He was counsel of record at the trial court level. It's not a situation where he was retained a day before the appeal was due and was late. No, but let me ask you about the separate appeal of the district court's order refusing to grant the extension, because if that was incorrect, then the appeal can go forward. Right, if you overturn that ruling. Okay, so let's look at that. Counsel says, well, in this particular case, what was the point of conferring? We've been at loggerheads forever. Nobody was going to say, gee, that's terrific, go ahead and appeal. Why is this not just overly technical on the part of the district court? Well, as I think you pointed out in response to that argument, that is not the standard on Rule 7-3. It doesn't say you have to meet and confer unless you think the other side won't agree. But this whole exercise is equitable. I mean, that's what this sort of safety valve is for, for things that went wrong by definition and seeking permission to go forward. So why don't we look at all the facts, including the possibility that it would have been a futile act? I think you should look at all the facts, but I would also keep in mind it's an abuse of discretion standard for the trial judge's review of all the facts, and I don't think the trial judge abused her discretion in denying the request, where he waited to the last minute, where he didn't meet and confer properly, where his excuses don't make sense that he thought there'd be a government shutdown, where he relies on the Corvello case, which came out August 8th, almost a full month before. He says that case changed minds, but that came out a month before, and it isn't even that new of law, that the West case and some of those other trial payment plan cases that come out before. So I don't think Corvello changed the landscape, and I've done this law for a while, and we didn't think it changed the landscape, because there's been other cases like that. But really the only reason the court gave was that counsel didn't comply with the meet and confer. Well, I'll stand by that reason, and I don't think the judge abused her discretion in relying upon him not complying. He hadn't complied with other things. There were briefs that were filed late in the case. I think there's a note in the record that his opposition to the summary judgment was late. The court also did rely on that. Right. He was frequently late on things, and he didn't do things properly. He didn't file the notice of appeal properly. He didn't meet and confer properly. He has excuses such as government shutdowns that aren't credible, or that he relied on the Corvello case to file it at the last minute when that was decided a month earlier, and it's not an abuse of jurisdiction. Assuming we have jurisdiction, would you respond to counsel's argument that substantial compliance suffices for their end of the bargain, and therefore, because the payments were made and accepted, albeit late, that there should have been a workout? Well, first off, there wasn't substantial compliance, and he relies on the Corvello case, and he said in response to Judge Daniel's question that there was no statement in the record in the Corvello case that the payments were made on time, and that's just completely false. The Corvello case was a motion to dismiss case where the court had to assume as true the allegation and the complaint that the payments were made on time and that there was full compliance. Here we're dealing with a summary judgment where we put forth separate statement of facts saying the payments were late, and that was undisputed. That wasn't the only default under the trial payment plan. The trial payment plan also required returning all financial or tax returns, and there's no dispute in the record, and let me just find the site. This is the supplemental record on page 85, that the tax returns were not returned until January of 2011. They were due by June of 2010. The trial payment plan does not say, if you do all of this, you're guaranteed to get a loan modification. It says, as you pointed out, if you do this, we will consider you for a loan modification. Chase did consider his client for a loan modification, and she did not qualify. So it's distinguishable on many, many ways. The Corvello case had language in the trial payment plan saying, I think in that case, the financial documents had already been turned in, because the trial payment plan said, if the representations were true, the financial representations, and if the borrower complied with the trial plan, then Wells Fargo would provide a permanent modification, and because the court had to assume it was true, that the representations were true, and that the borrower complied with the trial plan, it was a correct decision. It was on a motion of dismiss, not a summary judgment. The starting point in looking at this substantively, though, I think has to be looking at what was alleged in the complaint, and the argument in the complaint was that Chase had accepted this March 23rd offer. That was what was briefed on the summary judgment, and even Mr. Robinson, in a declaration in response to the summary judgment, he was talking about how Chase's April 16th letter was an acceptance of his client's March 23rd offer, and there's no disputed issue of fact on that. The offer was for completely different terms than what Chase's trial plan was. So there was no, if you look at what's alleged in the complaint and what was argued on the summary judgment, the trial court's ruling was absolutely correct. There was no offer and acceptance. There was an offer on March 23rd and a counteroffer on April 16th, which the borrower admittedly did not comply with. On whether to return the payments or not, the court, again, was correct in the questions to Mr. Robinson. There is no obligation to return payments. The borrower had a loan with Chase. The borrower was in default on the loan with Chase. The monthly payments she was already obligated to pay were greater than the trial payments, and there was no obligation to return what she owed. She was not paying just out of the goodness of her heart. She owed it. Otherwise, she would be subject to foreclosure. And with that, unless there are questions, I'll defer the rest of my time to Mr. Robinson. Counsel, I have a question just for perspective. And you may very well win on all the procedural issues of untimeliness or just on the summary judgment merits. But I would like to know what is the full amount that the debtor owes currently to your client on the mortgage? I don't have a payoff quote or a reinstatement quote. As of 2009, when she was in default, she owed $27,000. She now has not made payments for another five years. So it's over six figures. But you're correct, that is not in the record, and I don't have the exact amount. But that's the order of magnitude. Yeah, she has not made a payment in five years. I think she stopped making payments after the trial plan was not accepted, and she hadn't made a number of payments before that. So she owed $27,000 as of 2009, and now we're in 2015. So a lot of interest has accrued. Well, a lot of interest and about 60 missed payments. Yeah, she's been living in the house for free since 2009, essentially, other than the three trial plan payments that she made in 2010, which now she's claiming we should have returned. And obviously, you shouldn't have an obligation to return payments, in my view, if she owes money. Right, and there's no contention that the loan was illegal or fraudulent or that she didn't receive the money. She did receive the money. She had been making payments. She had financial issues that prevented her from continuing to make payments. So she applied for a trial plan. I think in the record, not material to the summary judgment, she was accepted for a trial plan, which she didn't make the payments on earlier in 2010. And then what we're talking about was a second attempt at a trial plan. So she had many attempts to make payments and get this right. Well, if I think you've answered my questions, then I don't have other ones. Thank you. Thank you. I have no further questions. I don't either. Yeah, thank you all. Mr. Robinson, you have two minutes for rebuttal. Yes, to go backwards up the list since it's fresher by mind, about $890,000 is now due. Because of the banks basically escalating the prices of real estate, this home was sold in 2005 for $800,000. The loan was $640,000. That's the loan that we're all still talking about. It wasn't a refinance. It was purchased. It's about $890,000 now. My client has tendered payments to them since after the trial program and Chase has refused. Their attorneys have nicely sent me back the check saying, please don't do this. In 2010, Chase asked my client to stop sending the money. So they said, and this is true in these other cases as well. I agree with you if you send someone money and you owe them money that the bank gets to keep the money. I agree with that statement. But what Chase did not do was tell her, now, okay, it's July 15, we got your payment. You are no longer in the trial program. But they didn't say that. Instead, they let her on for another year and a half. We need this, that, and the other thing. And I think the reason they do this is so that the homeowner stays in place and they don't have to buy security, landscaping. The house, the property is still taken care of. And I think that's one of the quid pros. I think that's why this dual tracking takes place. I do want to address this Mr. Robinson doesn't comply with court stuff because it's not true. And in the case, this record indicates that the motion for summary judgment was filed on April 29. And my oppositions were on file May 13. That's 14 days later. So if the judge feels that she had a scheduling order that said an opposition to dispositive motion is due in seven days, I apologize, I didn't have any understanding of something like that. And in fact, my oppositions of a multi-hundred page motion and declarations was on file in two weeks. So I do think timeliness was complied with there. Thank you for your consideration. Do you want to sum up in a sentence or two? In terms of the appeal, yes. All the cases that were cited by the respondent, Alaska Limestone, Sprout, Grow, something's not done in 36 days in terms of the motion. Notice of appeal was not even prepared. In this case, there was notice to the court through the clicking. There was notice to opposing counsel on September 3 that the notice had been filed. And it is an inexplicable problem, but my PDF file that was uploaded that day still bears a September 3 date of 10 in the morning Pacific time. Thank you counsel. The case just argued is submitted and we appreciate the helpful arguments from both of you.
judges: Graber, Gould, Daniel